UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| CARE REALTY, LLC and <br> THCI COMPANY, LLC <br><br> Plaintiffs; <br><br> v. <br><br> LAKEVIEW NEUROREHABILITATION CENTER, INC., LAKEVIEW MANAGEMENT, INC., & LAKEVIEW NEUROREHAB CENTER MIDWEST, INC. <br> Defendants. | Civil Action No. _____ |

## COMPLAINT

NOW COME the plaintiffs, THCI Company, LLC and Care Realty, LLC, by and through their attorneys, Devine, Millimet and Branch, Professional Association, and complain against the defendants, Lakeview Neurorehabilitation Center, Inc., Lakeview Management, Inc., and Lakeview Neurorehab Center Midwest, Inc. (collectively "Lakeview"), as follows:

## NATURE OF THE CASE

THCI brings this action to enforce certain rights pursuant to the Amended Leases between THCI and Lakeview concerning the neurorehabilitation facilities located in Effingham, New Hampshire and Waterford, Wisconsin. The Amended Leases ran for an initial term of ten (10) years, from September 30, 1997 until September 30, 2007. The Amended Leases provided Lakeview the option to extend the lease term for three (3)

successive five (5) year terms provided certain conditions were met.  Article 1.4 of the Amended Leases, provides that Base Rent for the extended lease term *shall* be the greater of (a) the fair market value rent for the facilities at the time of the extension, or (b) the Base Rent in effect at the time of the extension.  Section 1.4 provides further that the fair market value rent will be determined by an appraisal of the facilities, performed by a mutually acceptable appraiser, as of October 1, 2007, or the first day of the extended term.  Since September 4, 2007, THCI and Lakeview have been in litigation (*Lakeview Management, Inc., et al. v. THCI Company, LLC and Care Realty, LLC,* Docket No.: 07-CV-0303-SM), concerning, among other things, whether Lakeview validly extended the Amended Leases.

On March 30, 2009, this Court issued a Memorandum Decision finding and ruling that Lakeview had validly extended the Amended Leases for an additional lease term.  Following this Court's decision, and in accordance with Article 1.4 of the Amended Leases, THCI asked Lakeview to participate in the fair market appraisal of the leased premises to ascertain the amount of Base Rent for the extended lease term.  Lakeview has rejected THCI's request and has otherwise refused to abide by its obligations under Article 1.4 of the Amended Leases.  Lakeview's refusal to cooperate in the fair market appraisal process constitutes a material breach of the Amended Leases.

In addition to Base Rent, Lakeview is obligated to pay THCI Additional Rent, which is based on the revenue generated from the leased rehabilitation facilities, as well as any other properties that are integral to Lakeview's operations (so-called "Net Income").  For many years, up until the third quarter of 2007, Lakeview reported on its financials, and included in the calculation of Additional Rent, revenue Lakeview generates from certain "group homes," which comprise part of Lakeview's operations.  Since the third quarter of 2007, Lakeview

has excluded the revenue generated by its "group homes" from its calculation of Net Income, which has reduced the amount of Additional Rent that it pays to THCI. Lakeview's failure to include the "group home" revenue in its calculation of Additional Rent constitutes a material breach of the Amended Leases.

## PARTIES

1. Plaintiff, Care Realty, LLC, is a limited liability company organized under the laws of Delaware and has a principal place of business in Fort Lee, New Jersey.

2. Plaintiff, THCI Company, LLC, is a limited liability company organized under the laws of Delaware and has a principal place of business in Fort Lee, New Jersey. THCI Company, LLC is registered to do business as a foreign limited liability company in New Hampshire. THCI Company, LLC is the record owner of the real estate located at 244 Highwatch Road, Effingham Falls, New Hampshire and 1701 Sharp Road, Waterford, Wisconsin. Unless otherwise indicated, Plaintiffs Care Realty, LLC and THCI Company, LLC are hereinafter collectively referred to as "THCI."

3. Defendant, Lakeview Neurorehabilitation Center, Inc., is a New Hampshire corporation with a principal place of business in Effingham Falls, New Hampshire.

4. Defendant, Lakeview Neurorehab Center Midwest, Inc., is a Wisconsin corporation with a principal place of business in Waterford, Wisconsin.

5. Defendant, Lakeview Management, Inc., is a New Hampshire corporation with a principal place of business in Effingham Falls, New Hampshire. Lakeview Management, Inc. owns and operates Lakeview Neurorehabilitation Center, Inc., which is a licensed

rehabilitation facility located at 244 Highwatch Road, Effingham Falls, New Hampshire. Lakeview Management, Inc. also owns and operates Lakeview Neurorehab Center Midwest, Inc., which is a licensed rehabilitation facility located at 1701 Sharp Road, Waterford, New Hampshire.  Unless otherwise indicated, Defendants, Lakeview Neurorehabilitation Center, Inc., Lakeview Neurorehab Center Midwest, Inc. and Lakeview Management, Inc. are hereinafter collectively referred to as "Lakeview."

## JURISDICTION

6. Jurisdiction is based on 28 U.S.C. § 1332(a)(1), which grants this Court original jurisdiction over actions between citizens of different states when the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2), in that a substantial part of the events or omissions giving rise to the claims occurred here.

## ALLEGATIONS COMMON TO ALL COUNTS

8. In 1995, Anton Merka ("Mr. Merka") and Carolyn McDermott ("Ms. McDermott") formed Lakeview Neurorehabilitation Center, Inc. ("LNC") and Lakeview Neurorehab Center Midwest, Inc. ("LNC-Midwest").

9. On November 22, 1995, Mr. Merka and Ms. McDermott formed Lakeview Management, Inc. ("LMI"), a New Hampshire corporation. Mr. Merka and Ms. McDermott are the sole shareholders of LMI. LMI is the sole shareholder of LNC and LNC-Midwest. LMI also operates LNC and LNC-Midwest.

10. In 1995, LNC and LNC-Midwest entered into identical Facility and Operating Lease Agreements (and a series of additional, related documents) with an entity known as, "MediTrust" pursuant to which they occupy and operate the rehabilitation facilities located in

Effingham Falls, New Hampshire and Waterford, Wisconsin, respectively. These lease agreements were later restated and amended on September 30, 1997 (the "Amended Leases"). At all relevant times, the relationship between THCI and Lakeview has been governed by the Amended Leases, and a series of additional, related documents.

11. THCI Company, LLC, its related entity, Care Realty, LLC, and their affiliates are part of a multi-state healthcare organization and is the licensed operator of over 6,000 beds in health care facilities located in at lease eight (8) states across the country.

12. On April 1, 2001, THCI purchased MediTrust, including the Lakeview properties, and in particular, the rehabilitation facilities located in New Hampshire and Wisconsin. As part of that transaction, THCI assumed all of MediTrust's rights and obligations under the Amended Leases with Lakeview.

A.     **Fair Market Rent Review**

13. The Amended Leases ran for an initial term of ten (10) years, from September 30, 1997 through September 30, 2007. Article 1.4 of the Amended Leases permits up to three (3) successive five (5) year extensions of the lease term, upon proper notice to THCI and provided that Lakeview is not in default at the time of the extension.

14. Article 1.4 of the Amended Leases also provides that, "[d]uring each Extended Term, all of the terms and conditions of this Lease shall continue in full force and effect, except that the Base Rent for each such Extended Term shall be the greater of (a) the fair market value rent for the Leased Property at such time, to be determined by an appraisal of the Leased Property performed by an appraiser mutually acceptable to the Lessor and the Lessee, as of the first day of each of the Extended Terms or (b) the Base Rent in effect immediately prior to the expiration of the preceding term."

15. Article 16.9 of the Amended Leases provides that any act, omission or delay by THCI shall not constitute a waiver of its rights or remedies under the Amended Leases. Article 16.9 also provides that the acceptance by THCI of any payment under the Amended Leases that is less than full of all amounts then due shall not constitute any waiver of any of THCI's rights and remedies under the Amended Leases. Article 16.9 also provides that, "[a]ny failure by [THCI] to take any action under this Lease . . . shall not be construed as a novation of this Lease . . . or as a waiver of such right or of the right of THCI thereafter to insist upon strict compliance of the Lease . . . ."

16. Shortly after the April 1, 2001 closing with MediTrust, Lakeview initiated conversations with THCI about amending or revising certain provisions of the Amended Leases. No amendments occurred.

17. On November 15, 2006, Lakeview sent a letter to THCI expressing Lakeview's desire to extend the Amended Leases for an additional lease term, provided that the parties were able to come to an agreement concerning Lakeview's proposed revisions to the Amended Leases, which, at the time, included a significant reduction in Base Rent.

18. On March 16, 2007, Mr. Merka sent a letter to THCI stating that Lakeview intended to extend the initial lease term of the Amended Leases for an additional five (5) years. Lakeview's March 16 letter incorporated by reference its November 15 letter, which set forth Lakeview's proposed changes to the Amended Leases for the extended lease term.

19. By letter dated April 16, 2007, Michele Torzilli, on behalf of THCI, responded to Lakeview's letter of March 16, 2007 and, in particular, Lakeview's proposed revisions to the Amended Leases by submitting its own counterproposals, which included an increase in the amount of Base Rent.

20. On May 2, 2007, Ms. McDermott emailed Mr. Torzilli and expressed her dissatisfaction with THCI's proposal to increase the amount of Base Rent for the extended lease term. Ms. McDermott also said that "we need to move on getting fair market real estate appraisals," for the purpose of determining the new Base Rent for the extended lease term.

21. Three weeks later, on May 23, 2007, Mr. Merka sent a further response to THCI's April 17 letter and again proposed certain revisions to the Amended Leases. Mr. Merka made it clear to THCI that Lakeview would condition any extension of the lease term upon a significant restructuring of the Amended Leases. Mr. Merka's May 23 letter did not mention or otherwise reference Ms. McDermott's May 2 email or any fair market appraisal of the leased premises.

22. In light of these communications, and in particular, Mr. Merka's May 23 letter, in which Lakeview expressly conditioned any lease extension on revisions to the leases, THCI did not believe that Lakeview had effectively extended the initial lease term, and even if it had, whether Lakeview would in fact remain in possession of the leased property for the extended lease term if the parties did not reach an agreement as to the proposed revisions to the leases.

23. During the summer of 2007, Lakeview continued to negotiate with THCI in an effort to obtain certain concessions on various provisions of the Amended Leases, including the amount of Base Rent for the extended lease term.

24. The parties, however, were unable to come to an agreement and on September 4, 2007, Lakeview filed a Verified Petition with the Carroll County Superior Court seeking, among other things, a declaration that Lakeview had effectively extended the Amended

7

Leases for an additional five (5) year lease term commencing October 1, 2007, and that THCI was in breach of the Amended Leases for failing to accept the lease extension.

25. THCI timely removed the action to this Court. THCI denied Lakeview had validly extended the lease term based on the equivocal nature of Lakeview's November 16, 2006 and March 16, 2007 letters, and the subsequent communications in which Lakeview expressly conditioned any lease extension on revisions to the Amended Leases. THCI challenged Lakeview's ability to extend the lease term because Lakeview was in default of the Amended Leases for failing to fully pay Additional Rent. THCI also asserted various counterclaims against Lakeview based on the outstanding amount of Additional Rent.

26. Following a five (5) day bench trial in July 2008, this Court issued a Memorandum Decision ("Order") on March 30, 2009, finding and ruling in relevant part that by its March 16, 2007 letter, Lakeview validly exercised its option to extend the initial lease term for an additional five (5) year period, as provided in Article 1.4 of the Amended Leases.

27. In light of this Court's Order, by letter to Lakeview dated April 6, 2009, THCI requested that, pursuant to Article 1.4, Lakeview and THCI initiate the fair market appraisal process to ascertain the amount of Base Rent Lakeview was obligated to pay to THCI during the extended lease term.

28. Lakeview rejected THCI's request and refuses to cooperate with THCI's efforts to initiate the appraisal process for the purpose of establishing the Base Rent for the extended lease term.

29. Lakeview's refusal or failure to cooperate fully in the process of appraising the leased property to determine the amount of Base Rent payable to THCI during the extended lease term constitutes a material breach of the Amended Leases.

B.     **"Group Home" Revenue**

30.     As mentioned, in addition to Base Rent, as defined in the Amended Leases, Article 3.1.2 of the Amended Leases requires Lakeview to pay Additional Rent, on a quarterly basis to THCI.  Unlike Base Rent, which is a fixed amount, Additional Rent fluctuates and is a function of the revenue generated by the rehabilitation facilities and their related properties.  The Amended Leases provide that Additional Rent shall be paid quarterly in arrears with the payments due on the first day of January, April, July and October.

31.     Pursuant to Article 3.1.2, Additional Rent is payable in "an amount equal to fifteen percent (15%) of Rental Net Income."  The Amended Leases define "Rental Net Income" as "the amount equal to the Net Income from the Facility and all of the Related Facilities then subject to a lease with Related Parties adding back depreciation, amortization, Additional Rent and management fees in excess of five percent (5%) of Gross Revenues."

32.     Article 6.1.1(e) provides in relevant part that, "in the event that at any time during the Term, [Lakeview] holds the fee title to or a leasehold interest in any real property and/or personal property which is used as an integral part of the operation of the Leased Property (but is not subject to this Lease) . . . it is acknowledged and agreed that all revenues generated from the operation of such additional real property shall be included in the determination of Net Income . . . ."

33.     The Amended Leases require Lakeview to provide THCI with financial statements on a quarterly and annual basis.  The financial statements provided between 2001 and 2007 included revenues to Lakeview generated from various "group homes" in its calculation of Net Income.  According to Lakeview's website (www.lakeviewsystem.com), the "group homes" are located in New Hampshire and are apartment based community re-

9

entry and supported care homes that offer specialized programs and services to meet the needs of Lakeview's patients. Lakeview represents that the "group homes" are part of the overall "Lakeview System," which includes LNC and LNC-Midwest.

34. Between 2001-2007, Lakeview calculated and paid Additional Rent to THCI based on Net Income that included revenue generated by the "group homes." Since the third quarter of 2007, Lakeview has excluded the "group home" revenue from its calculation of Net Income. Specifically, as evidenced by the financial statements provided to THCI following the close of the third quarter of 2007, for the first time, Lakeview deducted revenue from the "group homes" from Net Income, which reduced the Additional Rent payment for that quarter. Since that time, through the present, Lakeview has deducted the "group home" revenue from Net Income. Lakeview's unilateral and unauthorized decision to exclude the "group home" revenue from its Net Income calculation has reduced the amount of Additional Rent paid to THCI.

35. Lakeview's failure and/or refusal to include the revenue generated by the "group homes" in its calculation of Net Income, and consequently its calculation of Additional Rent, constitutes a breach of Articles 3.1.2 and 6.1.1(e) of the Amended Leases

36. THCI has fully performed all of its obligations under the Amended Leases.

37. THCI is entitled to damages caused by Lakeview's breaches of the Amended Leases, plus interests, costs and attorneys' fees, as well as all other damages in an amount to be determined at trial.

### Count I - Declaratory Judgment

38. THCI realleges and reaffirms all of the preceding allegations as if set forth fully herein.

39. An actual and present controversy exists between THCI and Lakeview regarding Lakeview's obligations under Article 1.4 of the Amended Leases to undergo a fair market appraisal of the leased premises to establish the amount of Base Rent for the extended lease term.

40. THCI seeks a declaration that Lakeview is in default of the Amended Leases for refusing to cooperate in the fair market appraisal process. THCI also seeks a declaration that Lakeview must comply with the Amended Leases and undergo the fair market appraisal process to ascertain the amount of Base Rent for the extended lease term, meaning October 1, 2007. THCI further seeks a declaration that it has fully complied with all of its obligations under the Amended Leases, and that Lakeview's failure and/or refusal to comply with the requirements on Article 1.4 is a material breach of the Amended Leases and is a violation of THCI's rights thereunder. Finally, THCI seeks a declaration that Lakeview's deduction of "group home" revenue from Net Income is a default and material breach of the Amended Leases.

**Count II - Breach of Contract (Amended Leases - Fair Market Rent) - Damages**

41. THCI realleges and reaffirms all of the preceding allegations as if set forth fully herein.

42. Article 1.4 provides in relevant part that Base Rent for the extended lease term shall be the greater of (a) the fair market value rent for the facilities at the time of the extension, or (b) the Base Rent in effect at the time of the extension.

43. Article 1.4 provides further that the fair market value rent will be determined by an appraisal of the facilities, performed by a mutually acceptable appraiser, as of October 1, 2007, or the first day of the extended term.

44. Lakeview, without excuse, has breached its obligations under the Amended Leases by, among other things, failing and/or refusing to cooperate with THCI's efforts to obtain an appraisal of the leased property pursuant to Article 1.4 of the Amended Leases.

45. THCI has fully complied with and performed its obligations under the Amended Leases.

46. Lakeview's failure and/or refusal to cooperate with THCI's efforts to appraise the leased property to establish the Base Rent constitutes a material breach of the Amended Leases.

47. THCI is entitled to damages caused by Lakeview's breaches of the leases (whether pursuant to the Amended Leases, common law or both), plus interests, costs and attorneys' fees, as well as all other damages in an amount to be determined at trial.

## Count III - Breach of Contract (Amended Leases - Fair Market Rent) - Specific Performance

48. THCI realleges and reaffirms all of the preceding allegations as if set forth fully herein.

49. As set forth above, Article 1.4 of the Amended Leases expressly provides that the Base Rent for the extended lease term shall be the greater of (a) the fair market value rent for the facilities at the time of the extension, or (b) the Base Rent in effect at the time of the extension, and that THCI and Lakeview are obligated to undergo an appraisal of the leased premises in order to determine the fair market value rent for the facilities for the extended lease term.

50. Lakeview's failure and/or refusal to cooperate with THCI's efforts to obtain an appraisal of the rehabilitation facilities constitutes a material breach of the Amended Leases.

51.     THCI is entitled to an order of specific performance directing Lakeview to comply fully with the provisions of Article 1.4 of the Amended Leases and undergo an appraisal of the leased premises to determine the fair market value rent for the extended lease term.

## Count IV - Unjust Enrichment (Fair Market Rent)

52.     THCI realleges and reaffirms all of the preceding allegations as if set forth fully herein.

53.     As set forth above, Article 1.4 of the Amended Leases provides in relevant part that Base Rent for the extended lease term shall be the greater of (a) the fair market value rent for the facilities at the time of the extension, or (b) the Base Rent in effect at the time of the extension.

54.     Lakeview has wrongfully refused to cooperate with THCI in the fair market appraisal process for the purpose of determining the amount of Base Rent for the extended lease term.

55.     As a result, Lakeview pays rent at the levels established in 1997, has occupied the facilities for thirteen (13) years with no rent adjustment and has deprived THCI of the value of the bargain Lakeview struck in the Amended Leases and related documents.

56.     Lakeview is unjustly enriched, to the detriment of THCI, by continuing to remain in possession of the leased premises without paying to THCI the proper amount of Base Rent.

57.     THCI has been, and continues to be, damaged by Lakeview's conduct and is, therefore, entitled to recover damages in an amount to be determined at trial.

**Count VI - Breach of Contract (Amended Leases - Additional Rent)**

58. THCI realleges and reaffirms all of the preceding allegations as if set forth fully herein.

59. As set forth above, Article 6.1.1(e) obligates Lakeview to account for revenue generated by any property that is an integral part of the LNC and/or LNC-Midwest facilities in its calculation of Net Income.

60. Since 2007, Lakeview has repeatedly and consistently breached the Amended Leases, including without limitation, Articles 6.1.1(e) and 3.1.2, by failing and/or refusing to include the revenue generated by its "group homes" in its calculation of Net Income. As a result, Lakeview has failed to pay to THCI the full amount of Additional Rent due under the Amended Leases.

61. Lakeview's failure to fully perform consistent with the terms of the Amended Leases constitutes a material breach of these contracts.

62. THCI is entitled to damages caused by Lakeview's breaches of the Leases, plus interests, costs and attorneys' fees, as well as all other damages in an amount to be determined at trial.

WHEREFORE, the plaintiffs, Care Realty, LLC and THCI Company, LLC respectfully request that this Court:

    A. Enter judgment in favor of the plaintiffs on each of their claims, as set forth herein;

    B. Award the plaintiffs damages in an amount to be determined at trial;

    C. Award the plaintiffs their reasonable costs, attorneys' fees and interest associated with litigating their claims, as set forth herein; and

   D. Grant such other and further relief as this Court deems just and equitable.

Dated: March 12, 2010  Respectfully submitted,

        **CARE REALTY, LLC and**
        **THCI COMPANY, LLC**
        By their attorneys,

        **DEVINE, MILLIMET & BRANCH**
        **PROFESSIONAL ASSOCIATION**

        By:  /s/ Leigh S. Willey_____
         Ovide M. Lamontagne, Esq. (Bar #1419)
         Daniel E. Will, Esq. (Bar #12176)
         Leigh S. Willey, Esq. (Bar #16193)
         Jonathan M. Shirley (Bar #16494)
         111 Amherst Street
         P.O. Box 71
         Manchester, NH 03101
         Telephone: (603) 669-1000